# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 109

OCTOBER TERM, A.D. 2024

October 25, 2024

DONALD FLOYD DETIMORE,

Appellant
(Defendant),

v.

S-24-0016

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Fremont County*
*The Honorable Jason M. Conder, Judge*

*Representing Appellant:*
    H. Michael Bennett, Corthell and King, P.C., Laramie, Wyoming. Argument by Mr. Bennett.

*Representing Appellee:*
    Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Kristine D. Rude, Assistant Attorney General. Argument by Ms. Rude.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]     Donald Floyd Detimore was convicted of sexually abusing his step-granddaughter, MD.  Prior to trial, the district court denied his motion to introduce evidence subject to the rape shield statute, Wyo. Stat. Ann. § 6-2-312.  He argues the district court's exclusion of that evidence violated his constitutional rights to confront the witnesses against him and to present a complete defense.  We affirm.

## ISSUE

[¶2]     Mr. Detimore raises one issue, which we restate as:

> Did the district court abuse its discretion or violate Mr. Detimore's constitutional rights to confrontation or to present a complete defense when it excluded evidence under the rape shield statute?

## FACTS

[¶3]     In March 2022, during her annual checkup, sixteen-year-old MD confided to a nurse that something happened to her when she was little.  The nurse reported the conversation to MD's mother, who informed MD's father.  MD eventually told her parents and law enforcement that Mr. Detimore, her paternal step-grandfather, repeatedly molested her when she was seven to nine years old at the home he shared with her grandmother.  She said the abuse began with Mr. Detimore talking to her about sex.  It progressed to Mr. Detimore showing her pornographic videos and magazines while touching her unclothed vagina with his fingers and making her touch his erect penis.  She revealed that she and Mr. Detimore often played a game where they would pretend to be animals by crawling around on the ground.  During this game, he would "mount [her], dry hump [her]" and then either ejaculate in his pants or go with her to the bathroom where he would masturbate until he ejaculated.  He also performed oral sex on her at least ten times.  Mr. Detimore told MD that if she told anyone about the abuse, he would say she "wanted it" and she would not see her grandmother anymore, which scared her.  When MD was nine or ten years old, she realized what Mr. Detimore did to her was wrong.  She did not report the abuse but told her parents she no longer wanted to go to Mr. Detimore's house and avoided Mr. Detimore at family gatherings.

[¶4]     Law enforcement interviewed Mr. Detimore.  He denied ever performing oral sex on MD or placing his fingers inside her vagina.  He admitted MD loved to pretend to be animals with him, and he may have inadvertently touched her when they wrestled.  He also admitted Cinemax was often on the television when MD stayed over at his house.  He referred to Cinemax as "Skinemax" and said it depicted nudity and sexual intercourse.

1

[¶5]    The State charged Mr. Detimore with one count of first-degree sexual abuse of a minor based on MD's allegations of Mr. Detimore performing oral sex on her and one count of third-degree sexual abuse of a minor based on her allegations of Mr. Detimore touching her vagina with his fingers.[1]  *See* Wyo. Stat. Ann. §§ 6-2-314(a)(i) (first-degree sexual abuse of a minor), 6-2-316(a)(iv) (third-degree sexual abuse of a minor).  Prior to trial, Mr. Detimore filed a motion to introduce evidence subject to the rape shield statute. As an offer of proof, he attached the affidavit of his defense counsel alleging that "[p]rior to MD making the allegations against [him]," Mr. Detimore caught MD engaged in an "embarrassing and shameful situation" in the basement of her home in Pinedale.[2]  He claimed it was crucial to introduce this evidence as it provided a motive for MD to fabricate the allegations against him and explained why MD stopped wanting to go to his house when she was younger.  He maintained excluding this evidence would violate his constitutional rights to confront the witnesses against him and to present a complete defense.

[¶6]    After a confidential hearing, the district court denied Mr. Detimore's motion.  It determined a defendant's constitutional right to confront the witnesses against him may be limited by the application of the rape shield statute, which prohibits the admission of evidence pertaining to a victim's past sexual conduct unless its "probative value . . . substantially outweighs the probability that its admission will create prejudice[.]"  Wyo. Stat. Ann. § 6-2-312(a)(iv).  The court found Mr. Detimore had not shown the "embarrassing and shameful situation" to be probative because he had not provided any evidence or an offer of proof that MD was embarrassed, ashamed, upset, or worried about Mr. Detimore witnessing the situation and recounting it to others and, consequently, he had failed to link the "embarrassing and shameful situation" to a motive for MD to fabricate. It also found that because Mr. Detimore expressly declined to question MD at the confidential hearing, he did not know what MD would say if confronted with the evidence. If MD denied the situation occurred, the court determined Mr. Detimore would have no further recourse and the evidence would be "wholly irrelevant."  In contrast, the court found the risk of prejudice if the evidence was admitted was great because any evidence concerning the prior sexual conduct of a victim is prejudicial "standing alone."  Because the probative value of the evidence did not substantially outweigh the probability of prejudice, the court held it was not admissible under the rape shield statute.  The district

---

[1] The State also charged Mr. Detimore with two counts of taking immoral or indecent acts with two different minors in the late 1970s and early 2000s.  For purposes of trial, the district court severed these counts from each other and from the counts relating to MD.  After the jury found Mr. Detimore guilty of sexually abusing MD, the State and Mr. Detimore agreed to the dismissal of the immoral and indecent counts, subject to conditions.

[2] The affidavit provided details of the "embarrassing and shameful situation" but those details, which were filed under seal, are confidential and will not be recounted here.  *See* Wyo. Stat. Ann. § 6-2-312(c) ("Any motion or affidavit submitted pursuant to this section is privileged information and shall not be released or made available for public use or scrutiny in any manner, including posttrial proceedings.").

court did not address Mr. Detimore's argument that a failure to allow the evidence would violate his constitutional right to present a complete defense.

[¶7]    Following a three-day trial, the jury found Mr. Detimore guilty of both charges.  The district court sentenced him to 40–50 years in prison.  Mr. Detimore timely appealed.

## STANDARD OF REVIEW

[¶8]    We review a district court's ruling on the admissibility of evidence, including its exclusion of evidence under the rape shield statute, for an abuse of discretion.  *Sparks v. State*, 2019 WY 50, ¶¶ 34, 38, 440 P.3d 1095, 1106, 1108 (Wyo. 2019) (citation omitted).  *See also Carroll v. State*, 2015 WY 87, ¶ 20, 352 P.3d 251, 257 (Wyo. 2015) ("The district court's evidentiary ruling under [the rape shield statute] is reviewed for abuse of discretion." (citing *Stogner v. State*, 674 P.2d 1298, 1300 (Wyo. 1984))).

> The "abuse of discretion" standard of review requires this Court to consider the reasonableness of the district court's ruling.  *Ortiz v. State*, 2014 WY 60, ¶ 92, 326 P.3d 883, 901 (Wyo. 2014); *Schreibvogel v. State*, 2010 WY 45, ¶ 12, 228 P.3d 874, 880 (Wyo. 2010).  "Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary and capricious manner." *Lancaster v. State*, 2002 WY 45, ¶ 11, 43 P.3d 80, 87 (Wyo. 2002) (citing *Trujillo v. State*, 2 P.3d 567, 571 (Wyo. 2000)).

*Triplett v. State*, 2017 WY 148, ¶ 23, 406 P.3d 1257, 1262 (Wyo. 2017).  The appellant bears the burden of establishing an abuse of discretion.  *Blair v. State*, 2022 WY 121, ¶ 17, 517 P.3d 597, 601 (Wyo. 2022) (citing *Kincaid v. State*, 2022 WY 4, ¶¶ 31–32, 501 P.3d 1257, 1263 (Wyo. 2022)).  Whether a defendant's constitutional rights to confrontation and to present a complete defense were violated is a question of law which we review de novo. *Farrow v. State*, 2019 WY 30, ¶ 52, 437 P.3d 809, 823 (Wyo. 2019) (constitutional right to present a complete defense); *Budig v. State*, 2010 WY 1, ¶ 7, 222 P.3d 148, 151 (Wyo. 2010) (constitutional right to confrontation).

## DISCUSSION

[¶9]    Mr. Detimore argues the district court violated his constitutional rights—his right to confrontation and his right to present a complete defense—when it prevented him from cross-examining MD concerning the "embarrassing and shameful situation" or otherwise introducing it as evidence at trial.  While he does not specifically argue the district court abused its discretion by excluding the evidence under the rape shield statute, whether Mr. Detimore's constitutional rights were violated turns in part on our resolution of that

3

question. *Sparks*, ¶¶ 41–42, 45–46, 440 P.3d at 1108–10 (relying, in part, on the conclusion that the district court properly excluded the evidence under the rape shield statute to determine Mr. Sparks' constitutional rights to confrontation and to present a complete defense were not violated). As a result, we first address whether the district court properly excluded the evidence under the rape shield statute and then turn to Mr. Detimore's constitutional arguments.

## A.     Rape Shield Statute

[¶10]   The rape shield statute, Wyo. Stat. Ann. § 6-2-312, "mandates a procedure that must be followed and a showing that must be made if a party seeks to introduce [evidence concerning the victim's past sexual conduct]."[3] *Moser v. State*, 2018 WY 12, ¶ 41, 409 P.3d 1236, 1248 (Wyo. 2018). It requires the defendant to provide pretrial notice of his intent to use such evidence and to make an offer of proof via affidavits of the relevance of the evidence to his defense. Wyo. Stat. Ann. § 6-2-312(a)(i) and (ii). If the district court finds the offer of proof sufficient, it must conduct a confidential hearing at which the victim may be questioned. Wyo. Stat. Ann. § 6-2-312(a)(iii). If the court determines the "probative value of the evidence substantially outweighs the probability that its admission will create prejudice," the evidence will be admissible. Wyo. Stat. Ann. § 6-2-312(a)(iv). "Although the rape shield statute is not an absolute bar to the admissibility of . . . evidence [concerning the victim's past sexual conduct], 'only in the unusual case will the probative

---

[3] Section 6-2-312 states in relevant part:

> (a)     In any prosecution under this article or for any lesser included offense, if evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim is to be offered the following procedure shall be used:
>> (i)     A written motion shall be made by the defendant to the court at least ten (10) days prior to the trial stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the victim and its relevancy to the defense;
>> (ii)     The written motion shall be accompanied by affidavits in which the offer of proof is stated;
>> (iii)     If the court finds the offer of proof sufficient, the court shall order a hearing in chambers, and at the hearing allow the questioning of the victim regarding the offer of proof made by the defendant and other pertinent evidence;
>> (iv)     At the conclusion of the hearing, if the court finds that the probative value of the evidence substantially outweighs the probability that its admission will create prejudice, the evidence shall be admissible pursuant to this section. The court may make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted.
> (b)     This section does not limit the introduction of evidence as to prior sexual conduct of the victim with the actor.

Wyo. Stat. Ann. § 6-2-312(a)–(b) (LexisNexis 2023).

value of this kind of evidence substantially outweigh its highly probable prejudicial effect on the victim[.]'" *Sparks*, ¶ 38, 440 P.3d at 1107–08 (quoting *Moser*, ¶ 42, 409 P.3d at 1249). *See also McGarvey v. State*, 2014 WY 66, ¶ 18, 325 P.3d 450, 456 (Wyo. 2014) ("[T]he sort of evidence to which the [rape shield] statute relates is 'generally *not* admissible' in Wyoming." (quoting *Stogner v. State*, 792 P.2d 1358, 1362 (Wyo. 1990))).

[¶11] Mr. Detimore argues the evidence that he caught MD in an "embarrassing and shameful situation" was extremely probative because MD's testimony was the only evidence showing he sexually abused her. He claims it was imperative to impeach her testimony with evidence that she had a motive to fabricate. He buttresses this argument by pointing out that the first question the prosecutor asked the jury during closing argument was "how could it ever be worth the trouble for [MD] to come tell this story if it weren't true? There's nothing in it for her." While he admits this was a fair question, he maintains he could have rebutted it by questioning MD about the "embarrassing and shameful situation." Mr. Detimore also argues the evidence was probative to counter MD's testimony that the reason she stopped going to her grandparents' house when she was younger was due to the sexual abuse. According to him, the fact he caught her in an "embarrassing and shameful situation" provides a different explanation for the cessation of visits. As for the prejudice posed by the evidence, Mr. Detimore maintains he did not seek to present the evidence to shame MD in the eyes of the jury. He claims there was little to no risk that the evidence would cause the jury to think less of MD as it was more likely that the jury would be sympathetic toward her given she would not only have to testify to the sexual abuse but also to the "embarrassing and shameful situation."

[¶12] The district court did not abuse its discretion when it excluded the evidence under the rape shield statute based on its finding that the probable prejudicial effect of the evidence substantially outweighed its probative value.

[¶13] Mr. Detimore claimed the evidence that he caught MD in an "embarrassing and shameful situation" was relevant to show she had a motive to falsely accuse him and a reason for avoiding him when she was younger. He did not, however, provide any evidence or an offer of proof linking the "embarrassing and shameful situation" to a motive by MD to lie or to avoid him. *James v. State*, 888 P.2d 200, 205 (Wyo. 1994) (finding district court did not abuse its discretion by excluding evidence of the victim's prior sexual conduct because there was no connection between that evidence and the victim's veracity or motivation to lie). He referred to the situation as "embarrassing and shameful" but did not offer any evidence that MD was ashamed or embarrassed that Mr. Detimore had caught her in the situation or that she was afraid or worried he would tell others. He did not question MD at the confidential hearing. Mr. Detimore's offer of proof did not specify the date or timeframe of the "embarrassing and shameful situation" other than to say it occurred "[p]rior to MD making the allegations against [him]." At the confidential hearing, defense counsel stated Mr. Detimore caught MD in the "embarrassing and shameful situation" when he still had a relationship with MD, indicating he witnessed the event when

5

she was younger. He failed to connect catching her in an "embarrassing and shameful situation" at an unspecified time when she was younger to a motive for her to lie years later. We agree with the district court that the evidence had little, if any, probative value.

[¶14] On the other hand, the probability of prejudice to MD if the evidence was introduced was high. The intent of the rape shield statute is "to protect the victim from embarrassment and abuse at trial and . . . to encourage the reporting of sexual assaults to the authorities. [It was] not enacted for the protection of the accused." *Heinrich v. State*, 638 P.2d 641, 646 (Wyo. 1981). While Mr. Detimore claims he did not seek to offer the evidence to embarrass or shame MD, he referred to the situation in the district court as "embarrassing and shameful" and "highly embarrassing." Based on this characterization alone, the district court did not abuse its discretion when it found the risk of prejudice to MD if the evidence was introduced was great.

[¶15] Because the probative value of the "embarrassing and shameful situation" did not substantially outweigh the probability it would create prejudice if introduced at trial, the district court properly excluded it under the rape shield statute.

## B. Right to Confrontation

[¶16] Mr. Detimore argues the district court's exclusion of the "embarrassing and shameful situation" under the rape shield statute violated his constitutional right to confront the witnesses against him. We disagree.

[¶17] "The constitutional right to confront a witness arises under the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Wyoming Constitution." *Budig*, ¶ 7, 222 P.3d at 151. We have explained the right to confrontation and the limits a district court may properly place on that right as follows:

> The primary right secured by the Confrontation Clause of the United States and Wyoming Constitutions is the right of cross-examination. *Hannon* [*v. State*, 2004 WY 8], ¶ 16, 84 P.3d [320,] 329 [(Wyo. 2004)] (citing *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). In order for there to be a violation of the right of confrontation, a defendant must show more than just a denial of the ability to ask specific questions of a particular witness. Rather, a defendant must show that he was prohibited "from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness . . . 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" *Hannon*, ¶ 18, 84 P.3d at 330 (quoting *Delaware v.*

6

*Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). The Confrontation Clause guarantees a defendant an "**opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985) (per curiam) (emphasis in original)). **A defendant's right to cross-examination of a witness is not unfettered, but is subject to the trial court's "discretion to reasonably limit cross-examination to prevent, among other things, questioning that is repetitive or of marginal relevance."** *Hannon*, ¶ 22, 84 P.3d at 331–32 (quoting *United States v. DeSoto*, 950 F.2d 626, 629–30 (10th Cir. 1991)); *see also Olden v. Kentucky*, 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988) (per curiam).

*Miller v. State*, 2006 WY 17, ¶ 8, 127 P.3d 793, 796 (Wyo. 2006) (second emphasis added). *See also Swan v. State*, 2014 WY 38, ¶ 10, 320 P.3d 235, 238–39 (Wyo. 2014).

[¶18] Mr. Detimore sought to cross-examine MD about the "embarrassing and shameful situation" to show she had a motive to falsely accuse him and to contradict her testimony that the reason she stopped visiting him was the sexual abuse. As explained above, the district court reasonably prohibited him from questioning MD about the situation under the rape shield statute. Besides precluding him from using the "embarrassing and shameful situation," the court did not restrict Mr. Detimore from challenging MD's credibility and motives at trial. During cross-examination, Mr. Detimore challenged MD's veracity by pointing out inconsistencies between her testimony at trial and the statements she made to law enforcement prior to trial. For example, MD reported to law enforcement that her grandmother was not home when the abuse first started because she was working. At trial, however, MD admitted her grandmother had a stroke a few weeks after MD turned seven and was homebound thereafter. MD also told law enforcement that she realized when she was nine or ten that Mr. Detimore's actions were wrong and she avoided him thereafter, but MD admitted during cross-examination that she spent time with Mr. Detimore and her grandmother after she turned ten and went hunting with Mr. Detimore when she was twelve. Mr. Detimore also elicited testimony from MD's parents that MD did not want to go to Mr. Detimore's home because they moved to Pinedale when MD was eight, she became involved in sports, and she wanted to "hang[] out" with friends.

[¶19] Because the "embarrassing and shameful situation" evidence was not admissible under the rape shield statute and Mr. Detimore was not otherwise restricted in his ability to challenge MD's credibility and motives, he was not denied his constitutional right to confrontation. *Sparks*, ¶ 42, 440 P.3d at 1109 ("where evidence was held inadmissible

under the rape shield statute, we have found no violation of a defendant's confrontation rights"); *Budig*, ¶¶ 13–14, 222 P.3d at 154 (because the victims' prior sexual conduct was not admissible under the rape shield statute and because the appellant was given the opportunity to challenge the victims' credibility, motives, and biases using other admissible evidence, the appellant was not denied his constitutionally protected right to confrontation).

## C. Right to Complete Defense

[¶20]   Mr. Detimore maintains the district court violated his constitutional right to present a complete defense when it excluded him from introducing the "embarrassing and shameful situation" at trial.   He claims the only evidence that he sexually abused MD was her testimony, and the evidence that he caught MD in an "embarrassing and shameful situation" would have supported his innocence defense by informing the jury why MD would falsely accuse him.

[¶21]      We have described the right to present a complete defense and the limitations on that right as follows:

> The United States Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986); *Hannon*, ¶ 62, 84 P.3d at 346.  "[T]he Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote." *Holmes* [*v. South Carolina*], 547 U.S. [319] at 327, 126 S.Ct. 1727 [164 L.Ed.2d 503] [(2006)].  **However, the Constitution does not prevent trial judges from applying well-established rules of evidence to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice,** confusion of the issues, or potential to mislead the jury. *Id.*  **The Constitution permits judges to exclude evidence that is** repetitive, **only marginally relevant,** or poses an undue risk of harassment, prejudice or confusion of the issues. *Id.*

*Sparks*, ¶ 45, 440 P.3d at 1109 (emphasis added) (quoting *Smith v. State*, 2009 WY 2, ¶ 37, 199 P.3d 1052, 1064 (Wyo. 2009)).

[¶22] The district court properly excluded the "embarrassing and shameful situation" under the rape shield statute because its marginal probative value was substantially

outweighed by the probability that its admission would create prejudice. Mr. Detimore's right to present a complete defense was not violated by exclusion of the evidence. *Sparks*, ¶ 46, 440 P.3d at 1109–10 ("[T]he district court excluded DJJ's prior statements based on its findings that the evidence was only marginally relevant and that its probative value was outweighed by its potential for prejudice. We have upheld that determination, and Mr. Sparks therefore cannot show a violation of his right to present a complete defense.").

## *CONCLUSION*

[¶23] The district court did not abuse its discretion when it determined the "embarrassing and shameful situation" was not admissible under the rape shield statute. The exclusion of the evidence did not violate Mr. Detimore's constitutional rights to confrontation and to present a complete defense. We affirm.